STATE of Missouri, Respondent,

v.

George Ray MURRAY, Appellant.

No. WD 31585.

Missouri Court of Appeals, Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

Jon M. Krebbs, Asst. Public Defender, Liberty, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

By the verdict of a jury appellant was convicted of the crime of stealing, and in accordance with the verdict, was sentenced to three years imprisonment in the Division of Corrections. The sole issue presented is the voluntariness of a written confession given by appellant. It appears that the written confession is the only substantial evidence which would sustain the conviction.

On February 14, 1979, money was taken from a bank deposit bag from the office of the North Kansas City Beverage Sales Company, while its bookkeeper was briefly away from her office therein. The bookkeeper could not identify the man who took the money, but she did describe the clothing of a man she saw running down the street. Appellant was subsequently seen sitting in the showroom of Westfall GMC by a sales person. She saw a police car pull up there and a police officer was interrogating a pedestrian, whom appellant saw, and he ducked down behind a truck in the showroom, walked over to the sales person's desk and sat down, then immediately got up and ran to the bathroom. She yelled to a fellow employee to get the police and as she was doing so, appellant ran out the south door. An officer searched the restroom, and the sales person saw him find over $400 from beneath a trash can liner. Another officer, having received a radio report, saw the man running from Westfall GMC and found appellant in the lobby of the EFD Company, and there arrested him, to which he offered no resistance.

With respect to the hearing on the pretrial motion to suppress appellant's confession, Detective Ronald L. Rivera testified: He was asked to interview appellant with regard to a theft which occurred at one of the area businesses. He did so in the afternoon of February 14, 1979, with Detective Gary Wells. Prior to taking the statement, Rivera advised appellant of his rights under *Miranda v. Arizona,* and appellant signed the "rights form". He did not threaten appellant or make any promises that no prosecution would be taken, or that he would not be charged with crimes for which he was being detained, if he made the statement. Rivera thought appellant understood what he was doing at the time—he answered questions specifically and responsively. The statement was originally taped, then transcribed by a stenographer, after which it was given to appellant to read over and make sure it was correct. Appellant did read it over, said he understood it and he signed it on each page.

During the discussions, but after the statement was taken, appellant tried to get Rivera to make promises to him to keep him from going back to the penitentiary. He advised Rivera that he knew of a lot of things going on, but none pertained to Rivera's department. A gun-running operation in an area was mentioned to appellant, and he said he could go and look around and possibly make any type of buys "that might

help as far as his case went." Appellant did not prove to be of any assistance to Rivera. Appellant asked Rivera if he would talk to the prosecutor about the case, and Rivera told him the case would be presented to the prosecutor. "If he was able to help in any way this would be told to the prosecutor and the prosecutor would file accordingly." Rivera did not guarantee that the prosecutor would not file the case, or that a lesser type of charge would be filed against appellant if he cooperated. "I stated that whatever happened would be solely from the prosecutor, that this would only be a sign that he was trying to work with us and was trying to be cooperative." Appellant was not subsequently cooperative, and did not get back in touch with Rivera until almost a month had gone by, after which the file was taken to the prosecutor for charges.

Detective Gary F. Wells testified similarly to Rivera. He heard appellant make the statement to Detective Rivera that he would do almost anything not to go back to the *pen*, which was after the tape recorder had been turned off and they were sitting there talking. Rivera was interested in some stolen guns, and the facts around that were, according to Wells: "A. Okay, the conversation went around to the effect that if Mr. Murray could assist Detective Rivera in any way that he would talk it over with the prosecutor and see if they couldn't work something out on this case that he was involved in." Appellant was then released. Wells did not hear Rivera promise appellant that he would not be charged with the theft pursuant to the statement.

Appellant testified: He acknowledged his signature to be on each of the three pages of the statement. His version was that Rivera made promises to him that if appellant would help him out, he would help him out, before the tape recording was made. This included getting appellant employment at Cook's Paint Company in North Kansas City. Appellant was told that the prosecutor was called about appellant's request for assurance that he would not be filed on. Appellant in fact cooperated, giving a list of names about a burglary to Rivera. He would not have given the statement had he not been made the promises.

The statement given by appellant is not before this court, but according to the testimony at trial of Rivera, appellant admitted that he took the money from North Kansas City Beverage Sales Company, but he did not know how much cash there was. He indicated that he was at Westfall GMC that day and left the money at that location. Appellant chose not to testify at the trial.

The state met its burden [*State v. Olds*, 569 S.W.2d 745, 751 (Mo.banc.1978)], of proving the voluntariness of appellant's confession by showing that at all stages he was informed of his constitutional rights, was capable of understanding them, and that no physical force, threats, promises or coercive tactics were used to obtain it. See *State v. Crowley*, 571 S.W.2d 460, 464[9, 10] (Mo.App.1978).

The evidence was conflicting as to *when* the promises were given by Rivera in return for appellant's cooperation in giving information as to criminal activities in the area, i. e., whether before or after the tape recording was made. In this situation, the matter of the credibility of the witnesses was for the trial court to determine. *State v. James*, 562 S.W.2d 185, 187 (Mo.App. 1978); *State v. Cook*, 557 S.W.2d 484, 488 (Mo.App.1977). Appellant's position here is that his testimony was conclusive on the facts, but the trial court was not required to believe his version. *State v. Stephens*, 507 S.W.2d 18, 21 (Mo.banc.1974). The record supports the determination that nothing was done prior to the taking of the confession which would improperly induce it.

The judgment is affirmed.

All concur.