STATE of Missouri, Respondent,

v.

Jeffrey Daniel HUNTER, Appellant.

No. WD 31509.

Missouri Court of Appeals,
Western District.

July 7, 1981.

Dick B. Dale, Richmond, for appellant.

John Ashcroft, Atty. Gen., Darrell Pane-thiere, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., and TUR-NAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

Appellant was found guilty of murder in the second degree by the verdict of a jury. In accordance with the verdict, the trial court sentenced him to 15 years imprisonment in the Division of Corrections.

In his first point appellant contends that the trial court erred in denying his pre-trial motion to strike the entire jury panel because its selection and composition did not represent a fair and accurate cross section of the community; it was not representative of appellant's economic and social peers; and appellant was precluded from having a fair and impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution. Appellant states in his brief that he "was tried with a white, middle aged, affluent jury of seven women and five men, which jury was picked from a panel which did not represent the peers of the defendant, a poor, white teenager who was brought to Missouri to pick marijuana."

Before a change of venue was granted to Livingston County appellant filed in Ray County a motion to dismiss the information alleging that Const. Mo. Art. I, § 22(b), and §§ 494.010 and 494.020, RSMo 1978, are unconstitutional and systematically exclude potential jurors without just cause or reason, "in that the same allows women to be excused from juries on request; requires that all jurors be at least 21 years of age; and exempts from jury service certain members of all volunteer fire departments, employees of state eleemosynary institutions, clergymen and ministers, practitioners of medicine, attorneys, clerks, or other officers of courts, ferry keepers, druggists, embalmers, postmasters, road overseers, coroners, millers, professors and teachers, * * * superintendents of county poorhouses, and all persons over the age of 65, * *." Amplifying the assertion now made as to the jury panel selection and composition, appellant asserted he would be required to be tried before jurors which are more likely to believe the police and prosecution and to be in favor of the death penalty, all in violation of his right to a fair and impartial jury under the Sixth and Fourteenth Amendments of the U. S. Constitution. Further, it was alleged that the selection was not made in accordance with § 494.240, and the selection process utilized underrepresents the poor, black, young, unemployed, minority races, and deprived him of an opportunity to be tried by a fair and impartial jury. Appellant put on no evidence in either Ray or Livingston counties factually to support his allegations. The trial court, however, considered a motion to strike the entire panel, but appellant declined to present any witness or evidence in support thereof. The court found that the normal and additional jury panel of 48 persons was selected in accordance with the statutes by a jury commission, the panel being apportioned according to the 1970 census among various county townships. The wheel, consisting of at least 400 names, was again proportionately obtained throughout the county from the voter registration list. Some prospective jurors were excused on an individual basis, one school teacher was excused, but excuses offered by women were accepted and granted only on the basis of other good cause. The panel did contain people over the age of 21. The motion was denied.

■ *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), held that jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof. Following *Taylor*, in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) [where petitioner's showing was that 54% of the adults in Jackson County, Missouri, were women, and only 14.5% of the weekly venires during the time in which his jury was chosen were female], the facts were found to violate the "fair cross section" requirement of the Sixth Amendment. Duren set out the standards for establishing a prima facie violation of the fair cross section requirement [439 U.S. 357, 361, 99 S.Ct. 664, 667, 58 L.Ed.2d 579]: "[T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." There is no showing of the percentage of women available for jury service in Livingston County. Note that, according to appellant, the jury was composed of seven women and five men. No statistical showing was made as to any other group which could be excused under § 494.031. In such case, under *State v. Carter*, 572 S.W.2d 430 (Mo.banc 1978), no prima facie case of violation of the fair cross section rule was made.

■ As to the requirement of § 494.010 that persons serving on juries be over 21 years of age, it was held in the *Carter* case, supra, 572 S.W.2d 434 [6], "We reject defendant's claim that § 494.010, RSMo 1969, unconstitutionally excludes those eighteen to twenty-one years of age from jury service under the authority of *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo.banc 1974)." No showing was made as to the contention that the jurors selected would be more likely to believe the police and the prosecution. It is mere speculation to suppose that jurors selected would not listen to the evidence and follow the instructions of the court.

■ § 494.240 provides that in each county the board of jury commissioners shall select names of not less than 400 persons "by consulting *any* public records * * *." (Emphasis added.) Appellant contends that Livingston County's use of voter registration records only (as stated by the trial court) was a violation of the statute. "Any" means "one or more", "several", or "an indefinite number". *State ex inf. Gentry v. Long-Bell Lumber Co.*, 321 Mo. 461, 12 S.W.2d 64, 80 (Mo.banc 1928). Appellant has failed to show that the court did not follow the statutory provisions. There is no support in the record for his assertion that poorer persons are less likely to register to vote. He has shown no prejudice. See *State v. Johnson*, 606 S.W.2d 655, 657 (Mo. 1980). The challenge to the selection process of the jury panel is overruled in its entirety.

Appellant next says that the trial court erred in overruling his motion to suppress his statement and admitting it into evidence. He says it was involuntary under the totality of the circumstances. A pretrial hearing on the motion was had. Appellant had been arrested in Richardson, Texas, on a charge of possession of marijuana on July 24, 1978, but no arraignment was had on that charge. At either 8:00 or 10:00 p. m., of that day, Sheriff Stockton of Ray County and Sheriff Darnell of Lafayette County arrived in Richardson, Texas, with a warrant for appellant's arrest for capital murder, and he was interrogated by the two officers at the police department in Richardson. The warrant was read to appellant, and he was given the *Miranda* warnings, and executed a "rights form". He stated that he understood the rights, and affirmatively stated that he wanted to talk to the officers. Appellant was questioned by Sheriff Darnell who wrote down in longhand his statement, read it to him and allowed him to read it, after which appellant signed it. Appellant never indi-

cated that he wished to withdraw his waiver of his rights; Darnell did not threaten him in any way and made him no promises. Appellant was not deprived of any food, water or sleep, and ate a sandwich during the interrogation. Darnell explained to appellant that he did not have to talk to them, and that if he ever decided to stop talking to him, he had the right to do so. Appellant was then about 18 years old, and to Darnell he looked like an intelligent young man. Darnell denied that he told appellant that if he did not kill anybody he would not be in any trouble in Missouri, so he had better make a statement to clear it up, and no one told appellant that others of the suspects (two others were in custody in Texas) had implicated him. Appellant had been in custody about 12 hours up to the time the statement was completed. The questioning began about 10:00 p. m., and the statement was completed at about 11:25 p. m.

■ The burden of proof as to voluntariness, once the confession or statement is challenged, is upon the state, *State v. Mitchell*, 611 S.W.2d 211, 213 (Mo.banc 1981), and voluntariness must be proved by a preponderance of the evidence, *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In *State v. Murray*, 614 S.W.2d 726 (Mo.App.1981), it was held that the state had met its burden of proving voluntariness of the confession because the defendant was informed of his constitutional rights; he was capable of understanding them; and there was no physical force, threats, promises or coercive tactics used to obtain it. There was evidence here, for the trial court to evaluate, of each of these elements. Appellant claims, however, that there was a kind of promise made. At trial, he testified that he made inquiry of Sheriff Darnell: "A Yes, Sir, I asked him if he could tell the difference between a rifle bullet—slug and a pistol slug and he said he could, so then I said something to the effect, 'Then if I didn't kill anybody then I *shouldn't be in any trouble*,' and I think he said something about, 'It depends on the circumstances but that should be right,' so I went ahead, and we were just talking and

he was just writing down while I was talking." In the pre-trial hearing, Darnell, as noted, denied any such statement, and in the trial he testified simply that he made no promises to appellant. As a credibility matter, this was for the trial court in the pre-trial hearing, and for the jury during trial, to determine.

■ On his contention that the totality of the circumstances showed involuntariness of the statement, appellant contends further: (1) He was only 18 years old, but not young enough to be a juvenile offender. [Youth is one factor to be considered, along with experience and intelligence. *State v. Barnett*, 338 S.W.2d 853, 856 (Mo.1960). But in cases of adolescents, age alone, without more, is insufficient to prevent a valid waiver of *Miranda* rights. *U. S. v. Ramsey*, 367 F.Supp. 1307 (W.D.Mo.1973)]; (2) Texas authorities held him all day on another charge before the Missouri sheriffs arrived with the murder warrant. [Confessions obtained where the accused was held all day without benefit of warrant have been held admissible. *State v. Smith*, 310 S.W.2d 845, 851 [8, 9] (Mo.1958), cert. denied 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231]; (3) Appellant had completed only the tenth grade. [Lack of education, standing alone, is not sufficient to render a confession or statement involuntary, if intelligence and understanding exist, as this record shows to be the fact]; (4) He was unable to reach his parents before giving the statement. [But the record shows that he understood that he was entitled to an attorney's advice]; (5) The statement was written in the sheriff's handwriting and was in his own words. [The record shows that appellant was questioned on each sentence written down and he agreed with each, and the entire statement when it was read back to him, and he signed it. Although appellant's trial testimony was less incriminating than the statement, that matter was for the jury.] None of appellant's contentions are sustainable. Deference is accorded the trial court's determination that the statement was voluntary, since a pre-trial evidentiary hearing was had. *State v. Hughes*, 596 S.W.2d 723

(Mo.banc 1980). Point II, raising the voluntariness issue, is overruled.

By Point III, appellant charges the sufficiency of the evidence to sustain the conviction. He was charged by second amended information with the felony of murder in the second degree, "in that on or about July 23, 1978, in the County of Ray, State of Missouri, the defendant, either alone or acting in concert with others, intentionally, premeditatedly, with malice aforethought and unlawfully caused the death of George Barnett by shooting him * * *." The evidence is this: The essential parts of appellant's (paraphrased) statement to Sheriff Darnell are these: On July 20, 1978, seven persons from Texas drove in two pickup trucks with Barnett to Missouri to pick marijuana for which Barnett told them they would make $100,000 each. Upon arriving, they went to a trailer rented by Barnett and another, who told them their rules, "that we were not to smoke any marijuana, have any guns, take any pictures and not to be seen doing anything that would make it look like we were harvesting marijuana." That night, and the following night, they picked a lot of marijuana, appellant picking 11 bags. Barnett and the other person did not want them leaving, but they agreed that they could go to Kansas City. On arriving in Kansas City, one Ferrell called a friend in Texas who told him that the two men they were working for were organization people who "burned other guys" and they should get away from them. The seven men started talking about what they should do about it, and when they were about one-half mile from the (Barnett) trailer, they decided that they were not going to get away from that place alive if they did not kill George and Don. Welborn, Striplin [both of whom claimed the Fifth Amendment at trial] and appellant drove the blue Ford Pickup to the trailer, and the other four guys stayed where they had stopped. Welborn, Striplin and appellant went into the kitchen of the trailer, and Welborn and Striplin went to the luggage room and each got a .22 caliber revolver. They came back to the kitchen and appellant there picked up a .22 caliber rifle which

he knew was loaded. The three sat in the kitchen trying to figure out how to do it, and decided that since appellant had the rifle the other two would walk down the hall and shoot George and Don and appellant would finish them off with the rifle. Welborn and Striplin checked their revolvers and walked down the hall and when appellant started down the hall, he "heard a bunch of shots and I heard Don screaming and Welborn and Striplin came running down the hall." The three of them ran out the door, Striplin running down the road and Welborn and appellant hid in the bushes. They went back in the trailer, loaded up some gear, then the other five men came up to to help load a lot of bags of marijuana. Appellant went back into the bedroom and picked up a billfold with $86.00, which he took. The three guns were thrown into the Missouri River as they crossed I–35. At the trial appellant testified that he picked up the rifle from the corner and sat down. Stuart (Striplin) and Rick (Welborn) were talking about how it should be done. "They said since I had the rifle they didn't want me walking down the isle and they would go down and something to the nature if anything was left or something like that that I was supposed to finish whatever they left, * * *."

Appellant seems to contend that there was no evidence that he had taken any overt action or affirmative steps to the success of the murder of George Barnett, that the state's evidence shows mere presence of the offense and nothing further. Appellant says, "In order to support the verdict an inference must be piled upon an inference including the inference that defendant's presence someway encouraged, aided or abetted the co-defendants in the killing of George Barnett, and the jury must have improperly and unreasonably inferred that the defendant took some type of affirmative step or committed some type of overt act during the planning of the offense, but no such evidence was introduced by the State, and there is a complete lack of such evidence." Although speaking with disapprobation of his statement given to

Sheriff Darnell, but in the sheriff's words and handwriting, appellant concedes that the portion thereof, " * * * we decided that we were not going to get away from that place alive if we did not kill George and Don * * * " is indicative of aiding and abetting. That, of course, is the crux of the submissibility of the state's case, and the accuracy and believability of the statement was for the jury to determine. Concededly, appellant did not shoot deceased, but the evidence need not show that he committed all of the acts which comprise the elements of the crime. *State v. Butler*, 310 S.W.2d 952, 957 [7–9] (Mo.1958), and cases cited. In *State v. Ramsey*, 368 S.W.2d 413, 417 [4, 7] (Mo.1963), these further observations, citing and quoting cases, are made: " ' " 'The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. * * * ' " ' * * * Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction.", and " ' " * * * In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' " ' " In *State v. Rollie*, 585 S.W.2d 78, 90 (Mo.App.1979), it was said, "Conviction will stand upon evidence, proving participation in the planning of the crime, * * *." See also *State v. Lute*, 608 S.W.2d 381, 384 (Mo.banc 1980), "[T]hat one who knowingly and intentionally aids or encourages the commission of an offense is guilty *of that offense*. Here, the jury could and did find that appellant participated in planning the homicide, and that there was an overt act in consummation of the plan by his taking possession of the loaded rifle for the purpose of finishing off the deceased. Point III, raising the issue of the submissibility of the state's case, is overruled.

The judgment is affirmed.

All concur.