**STATE of Missouri, Respondent,**

v.

**Leo A. RANK, Appellant.**

**No. WD 46003.**

Missouri Court of Appeals,
Western District.

Feb. 23, 1993.

As Modified March 29, 1993.

Robert S. Drake, Jr., Warsaw, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and SPINDEN, JJ.

LOWENSTEIN, Chief Judge.

Leo Rank was court-tried and found guilty of sodomizing a six-year-old daughter of his son's wife, (the victim, his step-granddaughter, will be referred to as "N"). Rank babysat with N in December, 1990, in Warsaw, Missouri. He does not contest the sufficiency of the evidence supporting a violation of § 566.060.3, RSMo.Cum.Supp. 1992 which denounces deviate sexual intercourse (any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person) with someone to whom he is not married who is under the age of fourteen. Rank received a fifteen year sentence for this Class B felony.

Other than the defendant taking the stand to disclose his age of sixty-five, the State supplied the rest of the facts. N's mother testified on December 31, while she was doing laundry with Rank, with her daughter present, "He told me that he had been licking on her ... and asked me if it was all right." Rank told his daughter-in-law that Steve, his son, would "understand." N's testimony, taken on a video, disclosed during the month of December, Rank undressed her and "stuck his thing" in her, licked where she went to the bathroom and inserted his finger in her. After his arrest, Rank wrote out a two page confession which included the following: "The only thing that I done was finger her and licked her vagina ... [N] wanted me to fuck her but I didn't as she really means a lot to me and since I have been a widower for the past six years and no woman I let my emotions get away from me."

County deputies and city police went to Rank's home in the evening of January 1. When Rank answered the door, the law enforcement officials told him he was under arrest as he stood in the doorway. They arrested Rank for rape and told him he would have to go to the sheriff's office. Rank, who was wearing pajamas with womens' purple pantyhose or nylon stockings showing underneath, asked if he could change his clothes. "He said, 'come in the house. I'll have to get dressed'." The four law enforcement officials, who had not obtained an arrest warrant, went into the defendant's home and one of them saw a typewriter with paper in it. That paper

and another page in open view was a daily diary or journal, which in explicit detail, recounted the liberties he had taken with N. The officers took Rank to jail. The next day, law enforcement officials obtained a search warrant, went back to the house and seized the papers they had seen as well as several years' worth of Rank's entries which detailed his extensive pattern of wearing women's clothes around the house. The Court received the documents into evidence.

The points raised on appeal are: 1) Rank never indicated he "understood and knowingly and intelligently waived his rights" when making his written confession, 2) the officers entered his home without an arrest warrant which should have resulted in exclusion of his diary, and 3) the police executed the post-arrest search warrant improperly.

## I.

Before giving his handwritten confession, a deputy read Rank his *Miranda* warnings twice. Rank relies on testimony given by the deputy that he never specifically asked Rank, "if he understood his rights at any time."

 Although the State has the burden of showing that Rank's confession was made knowingly and voluntarily of his rights to remain silent, *Tague v. Louisiana*, 444 U.S. 469, 471, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980); *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979), the surrounding circumstances support the trial court's decision not to suppress the confession. Rank reads and writes and has an eighth grade education. There is not a hint of evidence he was unable to understand the effect of writing out a statement, or evidence of any police coercion. *State v. Hunter*, 619 S.W.2d 883, 886 (Mo.App. 1981). After having the acuity to ask N's mother to consent to the sexual activity, it would be absurd to now say Rank didn't knowingly waive his right to remain silent, *State v. Schnick*, 819 S.W.2d 330, 336 (Mo. 1991) especially since he volunteered to make the confession. *State v. McCulley*, 736 S.W.2d 504, 506 (Mo.App.1987).

Rank wrote the confession January 2 on a form captioned "VOLUNTARY STATEMENT" with a printed portion advising him of his right to remain silent. The facts created an inference his words and acts came after a knowing waiver. *Tague*, 444 U.S. at 471, 100 S.Ct. at 653. As such, there was a preponderance of evidence supporting the trial court's decision to admit the confession. *State v. Weston*, 769 S.W.2d 164, 167 (Mo.App.1989).

## II.

 Relying on *State v. Woods*, 790 S.W.2d 253 (Mo.App.1990), and this court's opinion in *State v. Peters*, 695 S.W.2d 140 (Mo.App.1985), Rank asserts the trial court erred when it admitted diary evidence because the police found this evidence only after making the initial warrantless entry into the defendant's home in violation of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which states under the Fourth Amendment, [A]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant. *Payton* creates a zone of privacy in an individual's house. *Peters*, 695 S.W.2d at 144. *Peters* does, however, contain language that, "had the police requested, Bill may have consented to the warrantless entry for the purpose of arrest for rape," and the State here argues that the police had Rank's consent to enter the home, thus making up for the lack of possessing a warrant. See also *State v. Adams*, 791 S.W.2d 873, 877 (Mo.App. 1990), *cert. den.* 498 U.S. 999, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990). This question need not be decided however.

 Assuming, without deciding the police improperly obtained the diary evidence, the defendant has the additional burden of showing that the evidence was prejudicial. *State v. Rogers*, 820 S.W.2d 567, 569 (Mo. App.1991). In a jury case where the evidence of guilt is strong, the reviewing court should consider error in the admission of evidence harmless. *State v. Ford*, 639 S.W.2d 573, 576 (Mo.1982). Here, the

child's testimony, the admissions to the mother and the accused's confession all established the same facts as those in the diary so the defendant did not suffer any prejudice. *State v. Thomas*, 820 S.W.2d 538, 542 (Mo.App.1991); *State v. Draman*, 797 S.W.2d 575, 577 (Mo.App.1990). The diary provided cumulative evidence to the admissions and other evidence which would render the admission harmless. *State v. Root*, 820 S.W.2d 682, 685 (Mo.App.1991); *State v. Bullington*, 684 S.W.2d 52, 58 (Mo.App.1984).

█ Any vitality to this point is further diluted by the fact that this was a jury waived case and an appellate court will presume the trial judge, as trier of fact, was not prejudiced and this evidence was not relied on in reaching a judgment. *State v. McMillin*, 783 S.W.2d 82, 96 (Mo. Banc.1990), *cert. den.* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); *State v. Lowe*, 674 S.W.2d 262, 265 (Mo.App.1984); *State v. Mendoza*, 661 S.W.2d 672, 675 (Mo.App.1983). The point is denied.

### III.

The final point also relates to the diary evidence, and precisely to the search warrant application obtained the day after the arrest. Rank contends the prosecutor or designee failed to sign the warrant as prescribed in § 542.276.2.(8), RSMo.Cum.Supp. 1992; consequently, the warrant was invalid and the evidence therefore suppressed. Section 542.276.1. has, in the past, allowed either a peace officer or the prosecutor to apply for a search warrant. In 1989, subparagraph (8), above, was added. The State admitted the January 2 warrant application was not signed by the county prosecutor.

This point will not carry the day for Rank. As with the previous point, the diaries added nothing not already in the case—that Rank had sodomized the victim. All the evidence added were descriptions of his personal habits plus his penchant for dressing in woman's clothing. Even if in-

correctly in evidence, this point would not require a reversal. This point is denied.

The judgment of conviction is affirmed.