**STATE of Missouri, Respondent,**

v.

**David E. CLAY, Appellant.**

**David E. CLAY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 48692, WD 50369.**

Missouri Court of Appeals,
Western District.

Sept. 26, 1995.

As Modified to Become a Published
Opinion on Oct. 31, 1995.

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ELLIS, Judge.

David E. Clay appeals his criminal convictions, following a bench trial, of two counts of sodomy (§ 566.060),[1] ten counts of rape (§ 566.030), and one count of endangering the welfare of a child in the first degree (§ 568.045). Clay also appeals the subsequent denial of his Rule 29.15 motion for postconviction relief. He was sentenced to a term of thirty years on each sodomy and rape count, the twelve sentences to be served concurrently, and a consecutive term of five years for endangering the welfare of a child. The appeals were consolidated pursuant to Rule 29.15(*l*).

A.R.B. was in the third grade when Clay, her father, began to sexually abuse her.[2] A.R.B. repeatedly testified (during the investigation of these crimes and at trial) to the incidents of sexual abuse by her father. Clay began "educating" his daughter about sex by forcing her to watch sexually explicit videos, including one entitled "Cherry Busters." Clay then took A.R.B. into his bedroom and acted out the scenes in the video. A.R.B. was laid "cater-cornered" on the bed; Clay strapped a hand-carved wooden, penis-shaped object around his waist; he grabbed the object with his hand and inserted it into his daughter's vagina; thereafter, Clay manipulated the object in and out of his daughter's vagina with his hand. When A.R.B. screamed and tried to pull away, he called her a "wimp" and a "bawl baby." On approximately twenty occasions, Clay inserted his penis rather than the wooden object into his daughter's vagina. More than once, Clay inserted both the wooden object and his penis into his daughter's anus; stuck his penis into her mouth where she would choke on it;

and strapped the wooden object onto his daughter's waist and forced her to insert it into his anus. One time, Clay forced his daughter to stand on his bed and masturbate in front of him. During several of these sexual attacks, A.R.B.'s mother was also present, instructing Clay about what to do and ordering her daughter to "hump him harder." A.R.B.'s parents threatened her with punishment if she resisted these sexual encounters. One time, after she told a relative about the sexual abuse, Clay spanked her with his hand and a belt.

On February 27, 1993, while staying overnight with her older cousin, Tammy McGee, A.R.B. disclosed what her mother and father had been doing to her. With Tammy's assistance, A.R.B. telephoned the "Child Abuse Hotline" and reported that her parents were sexually abusing her. That same night, an interdisciplinary investigation team came to Tammy's home to investigate A.R.B.'s report. The team consisted of Randy Ewart and Bill Conger, Clark County sheriff's deputies; Gloria Macomber, a social worker with the Missouri Division of Family Services; and Eric DeRosear, chief deputy juvenile officer for the 1st Judicial Circuit. A.R.B. told them about the various sexual acts she had been forced to engage in with her father (and mother). The following week, A.R.B. was interviewed again; this interview was tape recorded and admitted at trial. During this interview, A.R.B. provided substantially the same information but in greater detail. During a valid search of Clay's trailer home, police officers seized a video entitled "Cherry Busters," several adult magazines, and three sexual devices (two hand-carved wooden, penis-shaped objects and one "plastic vibrating device"). During trial, Clay admitted he owned the video found by police in his home. He also testified he found one wooden object in the closet when he purchased the trailer home and had carved the other one.

A.R.B. was examined by Dr. Peter Dureska. Dr. Dureska discovered her "hymen was

---

1. In 1994, changes were made to the statutes under which Clay was charged. Therefore, we utilize the version applicable at the time of the events giving rise to this case. As a result, all statutory references are to RSMo Cum.Supp. 1992, unless otherwise noted.

2. A.R.B. was approximately 10 years old at the time of the molestation and 11 years old at the time of trial.

totally disrupted and easily admitted a full size speculum into the vagina." He also testified the size of A.R.B.'s vagina was not consistent with a "straddle type injury" that can sometimes explain a ruptured hymen. Dr. Dureska concluded the physical findings of his examination were consistent with A.R.B.'s account of the sexual abuse by her father (and mother). Following this examination, the interdisciplinary investigation team interviewed A.R.B. a third time to again inquire whether A.R.B. was telling the truth; A.R.B. maintained her account of the events was true.

Clay waived a jury trial, and evidence was heard by the court. The trial court found him guilty.[3] Clay subsequently filed a Rule 29.15 motion for post-conviction relief which was denied. Clay now appeals his convictions and sentences and the denial of his Rule 29.15 motion.

 In his first point, Clay contends the trial court erred in denying his Motion for Judgment of Acquittal at the close of all evidence as to Count II (sodomy) and Count XIV (endangering the welfare of a child in the first degree) because the state failed to establish the required elements for those two crimes. Our review on this point is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). *See also State v. Harris*, 774 S.W.2d 487, 491 (Mo. App.1989) (the standard for sufficiency of evidence is the same for a court-tried case and a jury-tried case). Additionally, "we view the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the State and disregard all evidence and inferences to the contrary." *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995).

 First, Clay asserts the State failed to establish that he engaged in "deviate sexual intercourse" with his daughter, a required element of the crime of sodomy.[4] "Deviate sexual intercourse" is "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010(1). Clay contends the crime of sodomy would require him to insert his hand and/or fingers rather than a wooden object into his daughter's vagina. He mistakenly relies on *State v. Follin*, 829 S.W.2d 90 (Mo. App.1992), to support that proposition. *Follin* is clearly distinguishable. In *Follin*, the defendant was charged with sodomy because he rubbed the victim's vagina with his penis. *Id.* at 91. The defendant's conviction was reversed because his conduct clearly did not involve the mouth, tongue, hand or anus as required for "deviate sexual intercourse" (and the crime of sodomy). *Id.* In comparison, the record reveals evidence and allowable inferences that Clay grasped the wooden, penis-shaped object at one end and manually inserted it into his daughter's vagina. He then manipulated the object in and out of her vagina *with his hand.* The statutory definition of "deviate sexual intercourse" (and the crime of sodomy) does not require penetration. *State v. Holmes*, 654 S.W.2d 133, 135 (Mo.App.1983).[5] "Involving" is the key term, and it is undeniable that Clay's manual insertion of the wooden, penis-shaped object into his daughter's vagina "involved" both the object and his hand. As a result, Clay's conduct constituted "deviate sexual intercourse" as defined by the statute.

 Clay next alleges the state presented no evidence as to how engaging in acts of sexual intercourse and deviate sexual intercourse with his daughter created a substantial risk to her life, body, or health as required to support his conviction under Count XIV, endangering the welfare of a child in

---

3. A.R.B.'s mother was tried separately and was convicted of ten counts of rape, one count of endangering the welfare of a child in the first degree, and two counts of use of a child in a sexual performance. She was sentenced to a total of twenty years for her crimes.

4. "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." § 566.060.3

5. *Holmes* cites the 1978 version of §§ 566.010(1) and 566.060. However, when compared to the Cum.Supp.1992 version, the only difference is the addition in the definition of sodomy of the phrase, "to whom he is not married."

the first degree. To suggest that multiple acts of sodomy and rape of a ten year old child does not pose a substantial risk to her life, body, or health is absurd. We will not clothe this contention with the mantle of rational argument by engaging in a prolonged discussion or analysis. It suffices to say that the court could reasonably infer a substantial risk to A.R.B.'s life, body or health based on Clay's repeated molestation, threats of punishment for resisting his sexual advances, and causing her to scream and try to pull away while he was manipulating a wooden penis-shaped object in and out of her vagina. Clay's first point is denied.

Requesting plain error review under Rule 30.20,[6] Clay asserts as his second point that the trial court erred by entering judgment and sentence against him on the charges of sodomy, rape, *and* endangering the welfare of a child in the first degree. Clay contends he is being punished twice for the same offense in violation of his right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. *State v. McTush*, 827 S.W.2d 184 (Mo. banc 1992), is instructive on this issue. "Double jeopardy analysis regarding multiple punishments [focuses on] ... determining whether cumulative punishments were intended by the legislature." *Id.* at 186 (citing *Missouri v. Hunter*, 459 U.S. 359, 366–69, 103 S.Ct. 673, 678–80, 74 L.Ed.2d 535 (1983)). Clearly the statutes involved here (§§ 566.030, 566.060, 568.045) do not state whether the legislature intended cumulative punishment. Therefore, we look to § 556.041[7] which permits the state to prosecute Clay for the commission of more than one offense. The only limitation applicable to this case is that he may not be convicted of more than one offense if one offense is included in the other, as defined in section 556.046(1).[8] § 556.041(1). Section

556.046(1) is the only subsection applicable to this case and provides that an offense is an "included offense" when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged...."[9] As Clay concedes in his brief, the charges of sodomy, rape, and endangering the welfare of a child in the first degree each require proof of a fact or element not required by the other offenses. As a result, none of the charged offenses is an "included offense" within the meaning of § 556.046(1), and the § 556.041 limitation on multiple convictions does not apply. *McTush*, 827 S.W.2d at 188. Clay's second point is denied.

In his third point, Clay asserts the motion court erred in denying his Rule 29.15 motion for post-conviction relief because he was deprived of due process of law and the effective assistance of counsel. Clay contends his trial attorneys were ineffective because they failed to object to the out-of-court statements made by A.R.B. to Dr. Dureska, Tammy McGee (A.R.B.'s cousin), Gloria Macomber, Randy Ewart, and Eric DeRosear, recounting the sexual abuse by her father. This court's review of a denial of a Rule 29.15 motion is limited to a determination whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc. 1994). The motion court's findings and conclusions are clearly erroneous only if, after a review of the entire record, this court is left "with a definite and firm impression that a mistake was made." *Id.*

To prevail on his ineffective assistance of counsel claim, Clay must show (1) his trial counsel's performance was deficient (counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances); and (2) that deficient performance prejudiced his de-

6. Plain error review was requested because Clay's trial counsel did not raise a claim of double jeopardy prior to or during trial; this assertion was first raised in Clay's appellate brief.

7. RSMo 1994.

8. RSMo 1994.

9. As the supreme court noted in *McTush*, § 556.046(1) essentially codifies the "same elements" test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").

fense. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984)). Prejudice is not presumed but rather must be demonstrated by showing affirmative proof of a reasonable probability that the result of the proceeding would have been different but for the errors. *State v. Parker,* 890 S.W.2d 312, 322 (Mo. App.1994). Furthermore, there is no reason for us to address both components of the test if Clay fails to make a sufficient showing on one. *Nolan,* 872 S.W.2d at 104.

 For his first subpoint, Clay contends all witness testimony concerning A.R.B.'s out-of-court statements was inadmissible hearsay. Clay argues the trial court erred in admitting the witness' testimony because it did not hold a hearing as required by § 491.075,[10] and the testimony was not otherwise admissible. Section 491.075 provides, in pertinent part:

A statement made by a child under the age of twelve relating to an offense under chapter ... 566 or 568 RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings ... as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability. . . .

Clay mistakenly relies on *State v. Russell,* 872 S.W.2d 866 (Mo.App.1994). In *Russell,* the defendant's sodomy case was tried to a jury. Here, Clay waived his right to a jury and opted for a bench trial. The statute does not mandate a separate hearing to establish reliability of a child's statements in a judge-tried case. Therefore, under the circumstances in this case, we cannot say it was error for the trial court to allow the testimony without such a hearing. Furthermore, even if the witness' testimony was improper, it is not clear from the record that the trial judge relied on the "inadmissible" evidence in reaching his verdict. *See State v. Sladek,* 835 S.W.2d 308, 313 (Mo. banc 1992). As a

result, we will presume the trial judge, as the trier of fact, was not prejudiced by any inadmissible evidence and was not influenced by such evidence in reaching his decision. *State v. Rank,* 849 S.W.2d 230, 233 (Mo.App.1993). Clay's first subpoint is without merit.

 Clay next alleges his trial counsel's failure to object to the allegedly inadmissible hearsay testimony regarding A.R.B.'s statements constituted ineffective assistance. This argument also fails. Clay implies in his brief that the statements were inadmissible hearsay *merely* because no § 491.075 hearing was held; he does not challenge the reliability of his daughter's statements. As a result, Clay practically concedes the statements would have been admissible but for the court's failure to conduct a hearing. Therefore, based on our conclusion in Clay's first subpoint, (that no separate hearing was required in this case), he essentially argues his trial counsel was ineffective for failing to object to admissible testimony. "Trial counsel is not ineffective in failing to advance non-meritorious objections." *State v. Ervin,* 835 S.W.2d 905, 932 (Mo. banc 1992). As a result, the motion court was not in error. Clay's second subpoint is also denied.

Finally, Clay contends his trial counsel's failure to object and the subsequent witnesses' testimony recounting A.R.B.'s sexual abuse was prejudicial to his defense. Having concluded it was not error to admit A.R.B.'s statements and Clay's trial counsel's performance was not deficient, it is unnecessary to consider the prejudice prong of the *Strickland* test for ineffective assistance of counsel. *Nolan,* 872 S.W.2d at 104. Therefore, Clay's final subpoint is denied.

The judgments of the trial court and the motion court are affirmed.

All concur.

10. RSMo 1994.